Electronically Filed
10/23/2018 10:52 AM
Fifth Judicial District, Lincoln County
Brenda Farnworth, Clerk of the Court
By: Sarah Thomas, Deputy Clerk

Jeffrey J. Hepworth, ISB No. 3455
J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICE
2229 W. State Street
P.O. Box 2815
Boise, ID 83701-2815
Telephone: (208) 333-0702
Facsimile: (208) 246-8655
courtservice@idalawyer.com

Attorneys for Plaintiff

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, IN AND FOR THE COUNTY OF LINCOLN

* * * * *

| | | |
|---|---|---|
| SCOTT DENNING, | ) | Case No. CV32-18-00046 |
| | ) | |
| Plaintiff, | ) | **AMENDED COMPLAINT AND** |
| | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| | ) | |
| LINCOLN COUNTY SHERIFF'S OFFICE, | ) | |
| a Public Entity, LINCOLN COUNTY, a | ) | |
| Public Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

* * * * *

COMES NOW, the Plaintiff, Scott Denning, by and through his counsel of record, Hepworth

Law Offices, for a cause of action against the Defendant, hereby states and alleges as follows:

**I.**

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 1



EXHIBIT

50

**PARTIES, JURISDICTION, AND VENUE**

1.      The Plaintiff, Scott Denning (hereinafter referred to as "Denning") is a resident of Dietrich, Lincoln County, State of Idaho.

2.      Defendant, Lincoln County is a public corporation pursuant to I.C. § 31-601 and is therefore liable for the wrongful action of its officers and agents acting under their authority for Lincoln County.

3.      Lincoln County Sheriff's Office, is a governmental sub-entity formed in Lincoln County, Idaho that is also responsible and liable for the wrongful actions of its officers and agents acting under their authority or apparent authority. This Defendant shall hereinafter be referred to as the "LCSO."

4.      This Court has jurisdiction and venue in Lincoln County pursuant to I.C. § 6-2105(3) and I.C. § 5-404.

**II.**

**GENERAL ALLEGATIONS**

5.      Sergeant Denning was employed by Defendants from approximately January 2015 until he was wrongfully terminated on December 29, 2017.

6.      Sergeant Denning was hired by LCSO as shift supervisor and was promoted to Sergeant. Denning temporarily served as an interim Chief Deputy, before returning to his position as Sergeant until he was fired on December 29, 2017.

7.      Defendants hired Sergeant Denning and paid him $18.58 an hour at the time of his firing. Sergeant Denning was not paid overtime for hours he worked more than 40 hours a week.

8.      On approximately October 31, 2017, Sergeant Denning received a call from dispatch just as

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 2

he was clocking off for the evening after working a charity event after his regular hours. Dispatch informed Sergeant Denning that Lincoln County Sheriff Rene Rodriguez had requested emergency relief after pursuing a potential criminal incident and may be in an altercation with as many as 20 other individuals.

9.  The incident arose during a time in which Sergeant Denning had personal concerns about Sheriff Rodriguez's fitness for duty in the wake of a messy divorce, potential alcohol abuse, and several public relations incidents in recent months.

10. Upon arriving at the scene, Sergeant Denning found Sheriff Rodriguez in plain clothes, and Sheriff Rodriguez appeared to have arrived on the scene in an unmarked county vehicle. Sheriff Rodriguez was accompanied by his civilian girlfriend, and approximately 6-8 members of the community, presumably residents of the area, were also on the scene.

11. Sheriff Rodriguez recounted the incident to Sergeant Denning. Sheriff Rodriguez stated that the incident had begun while Sheriff Rodriguez was celebrating Halloween at the home of his girlfriend's family. Sheriff Rodriguez told Sergeant Denning that he had heard screeching tires and his girlfriend's children reportedly claimed they were almost hit by a vehicle outside their home. Sheriff Rodriguez initiated a search for the alleged vehicle, although he had not personally witnessed the incident and claimed to have been "following the sound of tires." Sheriff Rodriguez stated that for an unknown reason he believed that a person known to the Lincoln County Sheriff's Office believed to be named Gene Strunk may have been involved. Sheriff Rodriguez thereafter confronted Mr. Strunk at his home.

12. According to Sheriff Rodriguez, Mr. Strunk answered the door and Sheriff Rodriguez asked him to come outside the home and talk to him on the basis that Sheriff Rodriguez claimed he

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 3

could smell alcohol on Mr. Strunk. Mr. Strunk declined to leave his home, at which point Sheriff Rodriguez stated he intended to throw Mr. Strunk in jail. Sheriff Rodriguez stated that he entered the home, and physically dragged Mr. Strunk out of the house. The two began a physical altercation. It was at that point that Sheriff Rodriguez's girlfriend called 9-1-1. After the incident, Sheriff Rodriguez convinced another officer, Deputy "Bobby" Wade, to book Mr. Strunk for delaying and obstructing a law enforcement officer. Based upon Rodriguez's recital of the events, Sergeant Denning advised Sheriff Rodriguez that he was not sure whether there were proper grounds for Mr. Strunk's arrest at that time. Sheriff Rodriguez persisted.

13.   Within twenty-four hours of the incident, Sergeant Denning approached LCSO Chief Deputy Steve Phillips about the incident. Sergeant Denning advised the Chief Deputy that at the very least, the incident would lead to a waste of public funds because Sheriff Rodriguez's conduct would open the county up for liability, and that Sheriff Rodriguez's conduct was dangerous and unprofessional. Sergeant Denning also noted that Sheriff's Rodriguez violated office policies and regulations by having his girlfriend participate in the incident, and that her presence at the scene may have caused complications as well. Chief Deputy Phillips said that he would talk to Sheriff Rodriguez about the issue.

14.   Within approximately one week, Chief Deputy Phillips called Sergeant Denning to discuss the matter again. During the formal conversation, Sergeant Denning reiterated his concerns that the decision to charge Mr. Strunk was likely a "bad arrest" and that Sheriff Rodriguez's conduct would lead to federal Section 1983 claim against the Lincoln County Sheriff's Department for Constitutional violations. Sergeant Denning noted that several civilians who

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 4

had come to the scene had also expressed interest in filing formal complaints with the Idaho State Police, as well as the Idaho Attorney General's Office, and that an investigation needed to be conducted. Rather than conduct further investigation, Chief Deputy Phillips and Sheriff Rodriguez chose to retaliate against Denning.

15. Following that conversation, Sergeant Denning's relationship with both Sheriff Rodriguez and Deputy Phillips completely deteriorated, and the Lincoln County Sheriff's Office began a campaign of false accusations and harassment against Sergeant Denning.

16. On December 4, 2017, Sergeant Denning was called in on his day off to come into the office with his county patrol unit. Sheriff Rodriguez personally served Sergeant Denning with a Letter of Suspension and stated that Sergeant Denning was being investigated for allegations of "firearms and evidence issues" that had arisen between October 26, 2017, and November 15, 2017.

17. After Sergeant Denning was suspended, the Lincoln County Sheriff's Office began expanding its investigation into as many as six allegations of misconduct, dating back to at least October 2016.

18. Without warning, and before the investigation team released its findings, Sergeant Denning was summarily terminated on December 29, 2017. The termination letter stated that "Upon reviewing the needs of the Lincoln County Sheriff's Office, I have reached the conclusion that your services are no longer required" and was signed by Sheriff Rodriguez.

19. Sergeant Denning was denied a name-clearing hearing following his termination.

20. LCSO has also sought to have Denning decertified as a police officer through the POST decertification process by claiming Denning committed acts of intentional dishonesty. The

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 5

POST decertification process has negatively impacted Denning's ability to mitigate his damages by pursuing substantially similar employment with other law enforcement agencies in the State of Idaho.

21.   LCSO, by and through its agents and representatives, have falsely accused Denning of lying, dishonesty, and of intentionally stealing personal property from Sheriff Rodriguez's office. These statements were made by LCSO having actual knowledge of the statements' falsity, with reckless disregard for the truth, or otherwise motivated by malice and retaliation.

22.   LCSO's false statements and efforts to have Denning decertified by Idaho's POST academy also preclude Denning from obtaining employment with private security consulting firms, which Denning has experience in, and thereby Defendant has precluded Denning from obtaining profitable overseas employment which pays a yearly salary in excess of $200,000.00 per year.

23.   LCSO's conduct has further caused Sergeant Denning emotional and psychological damages by denying him future economic advantages, and denying him the pleasure, enjoyment, and comfort of serving in law enforcement, a career that has largely defined him for the duration of his adult life.

24.   Defendants' illegal and tortious conduct was motivated by retaliation and malice, and was foreseeably intended to ruin Denning's career in law enforcement and cause substantial personal distress. Defendants' conduct has resulted in substantial personal injuries and economic damages, as well as violations of Denning's constitutional rights.

25.   On or about February 14, 2018, Denning filed a Notice of Claim for Damages under the Idaho Tort Claim Act, Title 6, Chapter 9, Idaho Code. Therefore, Denning has complied with

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 6

the notice requirements and more than 90 days have passed since the Tort Claim was filed.

### III.

### COUNT ONE:

### VIOLATION OF I.C. § 6-2101 *et seq.* ("IPPEA")

26.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

27.    Sergeant Denning was employed by Lincoln County and the Lincoln County Sheriff's Office since January 2015 supervised by Lincoln County Sheriff, Rene Rodriguez.

28.    On or about November 1, 2017, Sergeant Denning participated in a "protected activity" under I.C. §6-2101 *et seq.* when he communicated in good faith the existence of a waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States regarding Sheriff Rodriguez's conduct to Chief Deputy Steve Phillips. Such communication was made at a time and in a manner that gave the Lincoln County Sheriff's Office reasonable opportunity to correct the waste or violation.

29.    Sergeant Denning again communicated the waste of public funds or suspected violations of law, rule and regulation when Sergeant Denning reiterated his concerns to Deputy Phillips approximately one week later.

30.    On or about December 4, 2017, Sergeant Denning was instructed to report to the Jerome County Sheriff's Office on December 8, 2017, at 10:00 a.m. for an interview in connection with an internal investigation being conducted by the Lincoln County sheriff's Office relating to allegations of firearms and evidence issues which occurred on or about October 26, 2017 and November 15, 2017. Sergeant Denning alleges the investigation was commenced with

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

malicious intent related to his participation in the protected activity, and that such conduct amounted to an "adverse action" under I.C. §6-2101 *et seq.*

31.   On December 29, 2017, Sergeant Denning was issued a termination letter. Termination is an adverse action pursuant to the Idaho Protection for Public Employees Act (IPPEA).

32.   The adverse actions taken by Defendants against Sergeant Denning were because of his participation in protected activities related to the waste of public funds and suspected violations of law, rule, or regulation. The adverse actions amount to acts of retaliation under the IPPEA.

33.   As a result of the wrongful termination of Sergeant Denning in violation of I.C. § 6-2104, Sergeant Denning is entitled to damages including but not limited to:

   (a)   Compensatory damages for past and future lost wages and benefits that Denning otherwise would have been entitled to as a full-time employee with Lincoln County Sheriff's Department until his retirement at age 70;

   (b)   The recovery of attorney fees and court costs incurred in this action as allowed by I.C. § 6-2106(5);

   (c)   Reinstatement to his position or an equivalent position as a full-time employee and reinstatement of full fringe benefits and seniority rights;

   (d)   Pre-and post-judgment interest pursuant to I.C. § 28-22-104;

   (e)   The assessment of a civil fine of not more than $500.00 to be submitted to the State Treasurer.

## COUNT TWO:

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 8

34.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

35.     Following Denning's wrongful termination from LCSO, Denning has searched diligently for comparable employment in law enforcement or private security work.

36.     Denning has approximately thirty-three years of relevant experience in the military, law enforcement, and private security consulting. Denning has dedicated his adult life to public service in law enforcement.

37.     At all material times herein, Defendants had knowledge that Denning's entire career has been dedicated to military service, law enforcement, and private security consulting.

38.     Defendants also had actual and/or constructive knowledge that Denning would seek employment in law enforcement or private security after he was wrongfully terminated from LCSO.

39.     Due to Denning's vast experience in law enforcement and security consulting, Denning had a reasonable economic expectancy that he would find suitable employment in either profession.

40.     In fact, Denning applied and was interviewed for several positions in law enforcement and private security, including with the Buhl Police Department and a private security firm, and was told that he was qualified for the open positions.

41.     Defendants LCSO (by and through its agents) intentionally interfered with Denning's prospective economic advantage by making false statements about his integrity and honesty, and thereby initiating the POST decertification process after Defendants terminated him. Such conduct was intentionally and foreseeably intended to prevent Denning from obtaining future employment in law enforcement or the security services. Defendants' conduct was

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 9

wrongful because it was false and motivated by retaliation.

42.     As a result of the decertification proceedings, Denning's prospective employers are unable to offer him employment, despite Denning otherwise being qualified for the positions. Denning has been denied multiple other positions in law enforcement as a result of the wrongful and malicious decertification proceedings pending against him.

43.     Defendants' wrongful conduct directly and proximately caused Denning to suffer direct economic damages, including lost future wages and lost benefits such as medical insurance and retirement.

## COUNT THREE:

## DEFAMATION & LIBEL

44.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

45.     LCSO directly, or acting by and through their agents, intentionally communicated false and defamatory statements (verbally and/or in writing) to third-parties accusing Denning of illegal misconduct in the course of his duty as an LCSO officer, as well as instances of dishonesty. Such defamatory statements were communicated to the Idaho POST department, as well as members of the community and Denning's colleagues at LCSO.

46.     LCSO's defamatory statements were made with actual knowledge of the statements' falsity, with reckless disregard for the truth, or otherwise motivated by malice and retaliation.

47.     As a direct and proximate result of Defendant's defamatory statements, Denning has suffered damage, including loss of reputation, loss of economic opportunity, pain and suffering, as well as emotional distress.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 10

## COUNT FOUR:

## 42 U.S.C. § 1983: VIOLATION OF DUE PROCESS

48.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

49.     Denning was an employee of Lincoln County and the LCSO, which are both sub-entities of the State of Idaho. Defendant was therefore acting at all times under color of statute, ordinance, regulation, custom or usage of the State of Idaho. Denning thereby falls under the protection of the Fourteenth Amendment prohibition that no State may deprive any person of "life, liberty, or property, without due process of law."

50.     Defendant's defamatory allegations regarding Denning's integrity, morality, and honesty implicate Denning's constitutional liberty interests.

51.     LCSO's false, malicious, and defamatory statements were sufficiently serious to stigmatize or otherwise burden Denning so that he is not able to take advantage of other employment opportunities. LCSO's conduct seriously damages Denning's standing and associations in his community, and imposes on Denning a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities.

52.     As a result of Defendants' statements and accusations, Denning is entitled to a name-clearing hearing as a matter of substantive and procedural Due Process. By and through their conduct, Defendant has denied Denning the opportunity of a name-clearing hearing in violation of the Fourteenth Amendment, as well as LCSO's own policies and regulations.

53.     Defendant's statements and conduct have deprived Denning of his constitutional liberty interests, and have directly and proximately caused damages in the form of loss of reputation, lost wages, lost future benefits, as well as emotional distress.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 11

54.   As a result of Defendant's wrongful conduct, Denning has been forced to incur the substantial costs of litigation in order to protect his rights, including reasonable attorney's fees and expert fees in order to enforce his rights under 42 U.S.C. § 1983. Denning seeks attorney fees and expert fees pursuant to 42 U.S.C. § 1988.

## COUNT FIVE:

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ("NIED")

55.   Plaintiff realleges and incorporates by reference all paragraphs set forth above.

56.   Defendant owed Denning a legal duty not to retaliate against him for his protected activities pursuant to I.C. § 6-2101 *et seq.*

57.   Defendant breached that duty when they suspended Denning, initiated an internal investigation against Denning, terminated Denning, and thereafter deprived him of future employment in law enforcement by initiating POST decertification proceedings against him.

58.   Defendant's wrongful, retaliatory conduct directly and proximately caused severe emotional distress, which has physically manifested itself in depression, sleeplessness, loss of identity, headaches, PTSD, loss of appetite, and other forms of manifestation to be proven at trial.

59.   Denning is entitled to recover damages arising from this emotional distress.

## IV.

## PRAYER FOR RELIEF

WHEREFORE, Denning requests judgment against the Defendant as follows:

1.   For past and future lost wages and benefits in an amount to be determined at trial by jury in an amount exceeding $75,000.00.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 12

2.       For compensatory and consequential damages, including lost wages, to be determined at trial;

3.       For reinstatement to a full-time position at the rate of pay not less than his previous hourly rate plus benefits and job protection and/or future lost wages instead of reinstatement;

4.       For reinstatement of full fringe benefits and seniority rights;

5.       For an award for emotional distress damages, punitive and/or liquidated damages in an amount to be determined at trial;

6.       For an award of interest (both pre- and post-judgment) at the highest lawful rate pursuant to I.C. § 28-22-104 and relevant state and federal law;

7.       For an award of court costs, including expert witness fees as appropriate, and attorney fees in an amount to be determined at the rate of $400.00 per hour pursuant to I.C. § 6-2106(5), 42 U.S.C. § 1988, I.C. § 12-120, and I.C. § 12-121 and applicable state and federal law.

8.       For such other legal or equitable damages as this Court deems just and appropriate.

PLAINTIFF DEMANDS TRIAL BY JURY

DATED this 23rd day of October, 2018.

HEPWORTH LAW OFFICE

By  /s/ *J. Grady Hepworth*
         J. Grady Hepworth
         Attorneys for Plaintiff

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 13

CERTIFICATE OF SERVICE

The undersigned, a resident attorney of the State of Idaho, with offices at 2229 W. State Street, Boise, Idaho, certifies that on the 23rd day of October, 2018, he caused a true and correct copy of the AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL to be forwarded with all required charges prepaid, by the method(s) indicated below, to the following:

| | | |
|---|---|---|
| Phillip J. Collaer | Hand Delivered | _____ |
| Anderson, Julian & Hull. LLP | U.S. Mail | _____ |
| C.W. Moore Plaza | Fax | _____ |
| 250 South Fifth Street, Ste 700 | Fed. Express | _____ |
| P.O. Box 7426 | ECF/Email | X |
| Boise, ID 83707-7426 | | |
| Fax:  (208) 344-5510 | | |
| pcollaer@ajhlaw.com | | |
| service@ajhlaw.com | | |

/s/ *J. Grady Hepworth*

J. Grady Hepworth

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
- 14